Next we will hear Aravi v. City Commission of Lawrence, Kansas, No. 25-3068. Mr. Baker. Your Honor, I'll reserve three minutes. My name is Linus L. Baker. I represent Philip Michael Irby, citizen journalist who has a YouTube channel called Lawrence Accountability. I want to start with two things the lower court said that were erroneous according to our complaint. The district court held that plaintiff was moving to and fro in the middle of an ongoing crime scene with an active shooter. Those two propositions are incorrect. The complaint, I'll just read it to you off of in our brief, but it says on May 19th at approximately 10.37 p.m. the defendants responded to a reported shootout between neighbors and then upon arrival defendants determined that one person was injured and rendered aid. They immediately came to believe that an armed shooter was inside of the home at 1931 Heatherwood Drive. There was no active shooter. It was like a domestic or a drive-by. They came on the scene. Someone was shot. We think the suspect is next door and so now we're going to try to get this suspect out, but there was no active shooter. The second proposition and this has come up in your argument today, which I found interesting. Let me ask you this for sure. So that sounds like sort of this active shooter idea sounds like a term of art kind of situation. I guess it's your contention that if someone's not, you know, hold up pointing their gun outside the house actively shooting at the moment that the cops are there and your client walks up that it's not an active shooter. It's a someone who was shooting, but now they're not shooting and they're just in their house. Well, yeah, if you want to the term of art active shooter means the suspect is not detained. You don't have control of the situation and there's an imminent safety threat. Both those propositions are incorrect. According to this complaint, there was no active shooter, no imminent. He was simply in his house. They said come out. That's not remarkable in law enforcement. We try to find somebody. We think he has a gun. Hey, come on out. We're not coming in yet. But that's not an active shooter. The lower court used that as a term of art, which upped the ante. And then he then said that it was an ongoing crime scene. Now, let's think about that. That came up today, 50 yards away from where this crime allegedly took place. That's where the crime took place. No one alleged that it was a crime scene. Nothing in our complaint said it. I mean, I can tell you nobody in the report said it. But when you say that this private property 50 yards away from where the crime actually happened and you say that's a crime scene, First Amendment gets pretty well reduced to zero. You have to get out of there. Now, the idea that people were walking through the crime scene, and that's really not what happened here. He was videotaping. I went to great length with snapshots to try to give the lower court the idea of where he was. When he approached, there was no tape. He didn't come on the other side of the street where they were. He went on the other side. And so he walked up videotaping. He is on private property in front of the apartment building filming. And so we allege that they had a suggested shelter in place, but they did not have that. order or anything like that. And so he's videotaping. This is something he does. He had prior interactions. They knew who he was when he came. That's Irvie. He's there. And so they then, under the orders, I guess they wanted him to keep moving, which the baseline is that you don't have that right if, under the form that he's on, he's on private property in front of that apartment just filming. That's all he's doing. And so the idea that then they would say, no, you can't do that, that gets into the Jenkins case, which is we have a right to film police from a distance. Now, the district court said that he said a comfortable something, but that's not the law. The law is that he's not interfering, but he does have a right to record. And that's what he was doing 50 yards away. Where were they? I mean, the police were, for lack of a better term, surrounding the house. Where were they? What distance were they from the home when he walked up? They were in the driveway. We have a picture. There was a house. They had the armed vehicle there, so it was parked up kind of facing, but it was almost in the yard, I think, in the driveway of that one house, facing the adjoining house. So there's the scene. There's what they're doing. Fifty yards away across from where the apartment is, this is where Irving is, virtually by the front door, filming. And so then you get into, so if he has a right to film the police, in the case of Jordan and Adams, 73F4-1162, 10th Circuit, 2023, the First Amendment protects the right to remain in the area to be able to criticize the observable police conduct. Otherwise, an officer could easily stop the protected criticism by simply asking the individual to leave, thereby forcing them to either depart, which would effectively silence them, or face arrest. Here, the officer did exactly that, asked Irving to leave and arrested him as he was leaving. So we're not talking about a buffer zone of 10 feet or 10 yards. We're talking about 50 yards away, away from whatever, and there's nothing going on. They're just sitting there in their armed vehicle with a spotlight. And they haven't established any parameter, no tape, no nothing, and they come up and say, hey, you need to keep moving. Well, if you can do that, if you can say you can have a dispersal order and say, get on out of here, you'll never be able to record police. They just say, we don't want you here. Then you get into the other aspects of this, which is McShane then says, well, I can't get him to move. But he's moving. He's moving. And so then he says, I can't get him to move. And the moment he says, I can't get him to move, I've got the Axon video snapshot, where Irving is turned around, hands in his pocket, walking away next to the apartment. They have to chase him, chase him as he's leaving the scene, to arrest him. Now, so whatever it is that they thought he should have done, he was in compliance. And then, of course, you have reports. They said, well, they told him to stop. And then other officers said, no, we told him to leave. And so the sergeant said, arrest him, and the lieutenant said, detain him. That's sort of the same thing, isn't it? Well, no, not really. Arrest him and detain him? Well, they are legal terms of art. And if you get detained, you're not getting arrested. So I would suggest to you that that's why the lieutenant said detain rather than arrest, because Irving wasn't doing anything wrong. Well, if you detain somebody, there's a chance they might be arrested afterwards. Maybe. Don't officers detain people incident to arrest? They detain them and make a decision on whether it's a legit arrest? I get you, Judge. I mean, I'm not quibbling about it. Yeah, and I'm with you. Go ahead. I get you. I don't mean to interrupt. No, I'm trying to answer your question. But there is a legal distinction. Otherwise, Unruh wouldn't have said detain. He would have said arrest. So in his mind, there was a difference between detaining and arresting. Because detaining says, I don't know that you've done anything wrong. You may have. I don't know. I don't know what you're doing. But arrest says, we've got probable cause. Detain says, I don't know I've got probable cause at all. And so they run him down and take him to the ground, arrest him and all that. And of course, they say, you know, we did this for your safety. So the lower court simply will say that did not adhere to the complaint allegations, even if this went to summary judgment. You have to decide 50 yards. And is that, can police say you can't record them from 50 yards away? I mean, the buffer zone that this court has already talked about is far more limited than that. And being on private property, I mean, that's a public forum. The apartment complex didn't say he couldn't be there. He wasn't any threat to anybody at all. And so we've got First Amendment claims and all that. The lower court simply collapsed all that in saying that it's a crime scene. Now, you heard in the first argument, which I found interesting, he said one of the definitions. He says, well, there's got to be evidence on the property in order to be a crime scene. There was no evidence across the street where he was. I mean, nobody said it was a crime scene. The lower court just made that up. And there's no analysis. I would suggest to the panel, if you're going to say you're in a crime scene, there should be some factors so that you'll know it's a crime scene. Otherwise, ipso facto, the lower court say crime scene. So you have to have some way to review that statement of fact, that it wasn't a crime scene. It couldn't possibly be a crime scene. Nobody alleged it. We certainly didn't allege it in the complaint. And so with that, everything, every reason the lower court gave to justify stopping Irvie from videotaping collapses. He had a right to be on the private property, and that's all he was doing was video. And so I gave you the snapshots. I wish there was some way in this modern day and age where you have videos. That's the best I can do, is take a snapshot. And that's what I did. I tried to put into the aerial where he was. He walked up on the other side. There was no yellow tape. And then they say, well, keep moving. I'm here. I'm going to protect you and all that stuff. You're a free man. You know, keep it going. And so when you look at this case, it is a citizen journalist photographing, videotaping from a safe distance from an apartment. And when you realize that he has a right to do that, then the other confrontations collapse. He has a First Amendment right to do that. He shouldn't have been arrested. Counsel, could I just ask you a question about the scope of the appeal here? In your brief, you list six issues for appeal, but they all appear to concern the First Amendment retaliatory arrest claim. Although there's a brief reference to failure to intervene in the sixth issue. But you have four different claims in your complaint. So at this point, are we down to the First Amendment retaliation claim? Well, you say down to. What are we looking at on appeal at this point? Because I don't see you addressing malicious prosecution or excessive force and only a limited reference to failure to intervene. So what are we supposed to be deciding here? First Amendment, false arrest, lack of probable cause. And I hear what you're saying. I make the argument that any force on a lack of probable cause is excessive. That's what I said. But it is collateral. And failure to intervene, that's another collateral. Your main, and I'll land on that, First Amendment and false arrest, that is the core of what we're looking at. Okay. So you're right. No, I appreciate that clarification. All right. And I'll reserve the rest. If you don't have any other questions, I'll reserve the rest of my time. Thank you. Thank you, counsel.  Thank you. Good morning, Your Honors. Michelle Stewart on behalf of Megan Shipley, Austin Twight, Grant Foster, and David McShane, all officers of the Lawrence Police Department, who are before this court respectfully requesting that you affirm the district court's grant of dismissal because plaintiff's complaint failed to plausibly plead facts that support any constitutional violation. And the district court correctly found that qualified immunity applied to protect these officer defendants. The crux of the claim, I understand now, is an allegation that, well, there was a violation of Mr. Irby's First Amendment rights because there was no probable cause to arrest him for filming. Probable cause existed for the officers to arrest him for the crime he was committing, and that was interfering with law enforcement officers, for which he was charged by the district attorney, and that case is still pending before the state district court. The complaint, I heard a lot from Mr. Baker about one fact of the complaint, but the complaint needs to be taken as a whole, and the complaint, the allegations that we take as true on a 12b6 motion, and this court takes when reviewing the same, they all support the existence of probable cause that Mr. Irby was not simply standing and filming from a safe approach, which I believe the Glick case cited by the Irizarry decision from this court talked about. Yes, it is a right to film police as long as it is not interfering with the officers' duties and that there is a reasonable restriction for time, place, and manner. Here, the complaint details, for pages and paragraphs, Mr. Irby's walking throughout this crime scene. It was an active shooter situation. The complaint even alleges it was an active shooter, that the police had been deployed to an active shooter, a man was in his home, the garage and interior doors were open. It required constant monitoring from the police. He had fired several shots from his house into the neighbor. They had information that he had possession of an AR-15 weapon. There were multiple police officers, and in addition, according to the complaint, again, the police had blocked off with their vehicles streets, so there was a blockade on the streets. Plaintiff claims, well, there wasn't a tape on the sidewalk. But there is allegations in the complaint that support that they had taken steps to secure the scene. They had sent out an officer to tell residents to either leave or shelter in place because this was an ongoing situation involving someone shooting out of their house. And that was the situation that the officer defendants were faced with when they arrived at the scene. And then Mr. Irby arrived on the scene and began walking, and it's detailed, paragraphs 114 of the complaint, 115, 116, that he was walking east, then he walked north. When Officer McShane approached him and said, you need to keep moving, you need to exit to the north, keep walking, I've got to get you out of here, you are in danger, those are things taken from the complaint. Mr. Irby did not comply. He did not exit the area by his own admission. He then turned south, so he's not following the directions. And in Kansas, a violation, interference with police officers in discharging their duties is, the elements are that the person knows they're being spoken to by a law enforcement officer, which clearly that is in the complaint, that the person knew that the officer was engaged in discharging their duties and that they knowingly and willingly obstructed or opposed the officer. Taken from the complaint. How was he obstructing anyone? He was just there. He wasn't causing a scene, he wasn't making a fuss, he was just there. Well, respectfully, Your Honor, he wasn't just there. And the complaint details, in multiple paragraphs, two officers not even named as defendants. Officer Pate, again, taken from the complaint, said that Mr. Irby's presence was distracting him from observing the house because they were trying to figure out, first of all, they've got somebody wandering in this crime scene, and then they've got to figure out, can we get him out, can we move him, do we have to cover him, what do we have to do with him? Also, Officer Welch. That's them being distracted by him just being there. So he was just there. I mean, they may have distracted him, but he wasn't doing anything. He wasn't yelling at them or telling them to go away or getting in front of them or anything like that. Absolutely, Your Honor. He was not doing that. He wasn't yelling at them or, you know, saying anything to them. What he was doing was inserting himself into a very active situation where they, the officers don't know what this gentleman who's holed up in the house shooting his gun out the window was going to do. And so a sworn law enforcement officer, they've got to make sure nothing bad happens to Mr. Irby either. So their attention, which should have been focused solely on securing this active shooter, getting him either out of the house, contained, that was in progress, and then you have a person walking, not just standing, but walking. Again, there is an aerial map that's detailed, that details Mr. Irby's walking throughout the crime scene. The district court was correct. Contrary to Mr. Baker's representation, Mr. Irby was walking to and fro. He details himself where he was walking. What about his position that he was outside the crime scene, that the crime scene was up basically starting in the driveway, that back where he was 50 yards away, he was plenty far away, he was not in danger? Your Honor, from the complaint, again, allegations in the complaint, the plaintiff affirmatively pled that he was told he was in the line of fire. He was in an active shooter situation. And I would hate to think the contrary if the police had just simply ignored Mr. Irby and allowed him to roam free if he would have been struck by a bullet, or if another officer would have been struck by a bullet while they were trying to move Mr. Irby out of the area. That was the basis for the arrest for interference with a police officer. He wasn't arrested, and there's nowhere in the dialogue that is quoted ad nauseum in the complaint that he was arrested for filming, for exercising his First Amendment rights. He was arrested because he did not obey the officer's directions, and he was hindering their ability to effectively discharge their duties as law enforcement. Counsel, the complaint alleged that other people were also walking near the standoff scene, and I take it that that is there to suggest that police targeted Mr. – am I pronouncing it right? You're saying Irby? I used to pronounce it Arave as well, but Mr. Baker has corrected me that it is Irby. Okay, Mr. Irby. Does that suggest the police were targeting Mr. Irby for his protected activity? Not at all, Your Honor. I would ask the Court to look at the totality of the complaint. First of all, the only allegation is there were some other people out there that didn't get arrested, but the complaint does not allege that the other individuals were ignoring law enforcement direction. It does not allege that these other individuals were not filming. So you've got somebody, oh, well, these people aren't filming, and I'm going to arrest the person that is filming. There were none of those allegations contained in the complaint, and the one conclusory allegation that is in the complaint is not objective evidence that would meet the Gonzales v. Trevino standard for plaintiff's burden of showing, in a First Amendment retaliatory arrest situation, that there was no probable cause. So, you know, to the extent there is a conclusory allegation that, well, some other people are outside and they didn't get arrested, there was no allegation that they were also similarly situated to Mr. Irvi. Irvi. I'm doing it now. Mr. Irvi. And there was also an allegation that these people were also wandering in and out of the active crime scene and interfering with the officer's ability to do their job. The district court relied on State v. Brown. It's a Kansas Supreme Court case that discussed interference, and in that case the suspect was hiding in his basement, refused to come out for five minutes, and was charged with, among other crimes, interfering with law enforcement officers discharging their duties. What's critical from that case and relied on by the district court here for the crime of interference is that even though he was only hiding for five minutes and refusing to cooperate with officers for five minutes, that was enough to be charged with the crime and found guilty of interfering with law enforcement because it interfered with their discharge of their duties. Here, Mr. Irvi's actions of walking throughout the streets, and again, we're going off of the allegations and the complaints as to what Mr. Irvi admits to doing. He was, by his actions, interfering with the discharge of their duties, and then when he was asked to either get inside if you live here or leave, he refused to cooperate, he refused to comply, and instead did just the opposite and continued to walk in and throughout the active crime scene situation. Again, the district court correctly found that qualified immunity applied. There was no, based on the totality of the circumstances facing the officers at the scene, very similar to this court's decision in Frye versus Town of Jackson, Wyoming, the totality of the circumstances as alleged in the complaint, viewed as the objectively reasonable officers on the scene, justified Mr. Irvi's arrest on May 20th of 2023. An authority, probable cause to arrest, because it exists based on the body of the complaint that negates any ability to state a constitutional violation, and qualified immunity was properly found to protect these officers from liability. And I can talk about excessive force, I can talk about the malicious prosecution claim, as those were also dealt with by the district court and properly found that the complaint did not state a constitutional violation for any of the other alleged claims, and we would request that the court affirm the district court's grant of qualified immunity and dismissal of these officers. I'm happy to answer any other questions that the court has. Thank you, counsel. Thank you. Let me start with Brown. Brown was a case in which the police already had a charge against the, he already committed a crime, they chased him into the house, and they said come out, and he wouldn't come out, and that was interfering. So they've got that upside down. Irvi did not commit a crime, therefore the order is unlawful. To accept their theory about distraction subsumes the right to videotape. If just being there and videotaping, hey, you're distracting me, and that's it, it subsumes the whole right to videotape. Don't you have them in a little bit of a box there, though, because of the nature of what was going on here? If there was a case where the police were merely arresting someone and had them down on the ground and cuffing them and everything, and your client was standing there videoing them, and they, you know, arrested him, that would be one thing. This is a case where they have your client wandering, and I mean, an errant bullet, I think we can all agree, even 50 yards away, an errant bullet could have struck your client, and at which time someone's going to point at them and say, why didn't you clear the scene? This was a shooting situation. This man was only 50 yards away. Well, that's a nice hypothetical, not in the complaint. It's not anything. All you have is... Well, you know, I mean, you've been up here arguing to us that he was 50 yards away. Well, that's a fact. We know that they were responding to a shooter. Past shooting. So this, and they don't know... Well, I mean, it doesn't have to, like, is your contention that the person has to be actively shooting when your client wanders up? Well, let me go back to where we started. It was not an active shooter scene. You just had somebody where they wanted to effectuate an arrest. They had a gun, and they just, they parked up there. They said, come out. And then had discharged it recently. Allegedly, okay. But still 50 yards away. I mean, your scenario where he's five foot away and resting, hey, you're distracting me. You're right. He wasn't doing anything. If you say I can't... I do. I agree with you. He wasn't doing anything. He just wandered up. I agree. Well, he wasn't even wandering towards them. He was by the apartment building. And to the point where they said, hey, you need to leave. You've got the video snapshot where he's walking away. And McShane says, I can't get him to move, which was false. He was leaving. He was leaving. And so based on that false information, sergeant says, go get him. Well, you can't do that. There's no probable cause on that. We're probably pressing Judge Matheson's patience. I'm sorry. I'm really sorry. He's just using the rest of her time. Oh, OK. Right. I'm sorry. All right. We just asked you to reverse the district. Thank you, counsel. Thanks to both of you for your arguments this morning. The case will be submitted and counsel are excused.